UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

Oliver Collins, Ph.D.,

    Plaintiff,

        v.                                   Case No. 3:10-CV-281 JVB

University of Notre Dame du Lac,

    Defendant.

**OPINION AND ORDER**

Plaintiff Dr. Oliver Collins, a tenured professor at Notre Dame, sued the university after the university dismissed him. Plaintiff alleges that the university breached his contract by not following the proper procedure when it dismissed him and by not showing adequate cause to dismiss him. Notre Dame counters that Plaintiff breached the contract by misappropriating National Science Foundation ("NSF") funds and using those funds for his personal purposes, while telling university and NSF officials that he was using the funds for other purposes.

Both parties move for summary judgment. Plaintiff moves for summary judgment on the grounds that the university breached his contract. Notre Dame moves for summary judgment on the grounds that Plaintiff, not Notre Dame, breached the contract. After reviewing the material facts and the parties' arguments, the Court grants in part and denies in part both motions.

**A. Standard of Review**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**B. Statement of Facts**

Neither party disputes the material facts. Instead, the crux of their dispute revolves around the interpretation of the procedural protections provided in the Academic Articles.

**(1)** *Plaintiff's Conduct*

Plaintiff was an engineering professor at Defendant Notre Dame du Lac University's Electrical Engineering Department. (DE 45 at 6.) During his tenure at Notre Dame, Plaintiff applied for and received eight or more NSF research grants, including a Major Research Instrumentation ("MRI") grant for acquisition of high speed mixed signal test equipment, and a grant for research entitled Intrinsically Digital Radio. (*Id.* at 11.)

In July 2009, the Chairman of the Electrical Engineering Department (Plaintiff's department) inspected whether some of Plaintiff's purchases were supported by NSF grant proposals or Notre Dame University matching funds. He found that, instead of purchasing the equipment listed in his grant application, Plaintiff used grant funds to purchase expensive camera equipment and Apple computers. (*Id.* at 13.) Plaintiff used the camera equipment to take thousands of personal photographs of a family residence in upstate New York. (*Id.* at 14.) He then used some of these pictures on a website advertising the residence as an inn and submitted other pictures to magazines for publication. (*Id.*) After investigating Plaintiff's purchases, university personnel found pornographic images on computers that he purchased with NSF grant money. (*Id.*) When the NSF and the university learned of Plaintiff's conduct, the NSF suspended all his NSF grants and launched a criminal investigation. (*Id.* at 5.) The university moved to dismiss Collins.

**(2)** *The Procedure to Dismiss a Tenured Professor under the Academic Articles*

Section 8 of the Academic Articles governs dismissal of tenured professors. The section mandates that the university may only dismiss a tenured professor after showing severe cause. (DE 53-1 at 2.) Under § 8(b) severe cause is:

- Academic dishonesty or plagiarism;
- Misrepresentation of academic credentials;
- Professional incompetence;
- Continued neglect of academic duties, regulations, or responsibilities;
- Conviction of a felony;
- Serious and deliberate personal or professional misconduct . . .;
- Continual serious disregard for the Catholic character of the University; or
- Causing notorious and public scandal.

*Id.*

Notre Dame's Provost must inform the professor "in writing[] of the charges, of the basis for the charges, and of the proposed sanction." (*Id.*) The accused professor can meet with the Provost to informally attempt to resolve the situation. (*Id.*) If the Provost and the professor cannot resolve the matter, the Provost must appoint "two elected members of the Academic Council to meet with the relevant University administrator and with the faculty member to attempt to resolve the matter." (*Id.*) One of the appointees must be a professor, not an administrator. (*Id.*)

If the matter is still not resolved after the meetings, the professor may request a hearing. At this hearing, "the Provost makes known the charges, but not the name of the accused, to the Executive Committee of the Academic Council. The Executive Committee . . . elects a Hearing

Committee consisting of three elected, tenured members of the Academic Council to conduct a formal, closed-door hearing." (*Id.* at 3.) The Executive Committee also chooses an alternate "to take the place of any member elected to the Hearing Committee who must recuse himself or herself because of bias or interest, including participation in the informal resolution process set forth [in subsection c]." (*Id.*)

Once the Executive Committee elects the Hearing Committee, the accused professor has thirty days to prepare a defense. (*Id.*) The university carries the burden of proof at the hearing to prove by clear and convincing evidence that adequate cause exists for severe sanctions. (*Id.*) The accused professor "has the right to bring counsel, to confront the accusers and adverse witnesses for questioning, and to present witnesses. The University also has the right to counsel and the right to present witnesses." (*Id.*) After the hearing, the Hearing Committee must "report[] its findings and recommendations in writing to the Provost and to the accused faculty member. The report must include factual findings as well as the Hearing Committee's conclusion regarding whether there is clear and convincing evidence of adequate cause for imposition of the severe sanction or dismissal." (*Id.*) The Provost decides the case on the basis of the Hearing Committee's recommendation. (*Id.*)

If the Provost decides to impose severe sanctions or dismiss the professor, the professor "has a right to appeal to the President within [ten] days." (*Id.* at 4.) The President decides the appeal with the advice of an Appeal Board. (*Id.*) The Academic Articles do not specifically mention a right to appeal the final decision to a court. However, all members of the Hearing Committee and Appeal Board must keep the matter confidential "except in the event that litigation requires disclosure." (*Id.*)

5

**(3)** *Notre Dame's Actions after Learning of Plaintiff's Conduct*

On September 21, 2009, Notre Dame's Provost sent a letter to Plaintiff notifying him of Notre Dame's formal charges. (DE 43 at 7.) The Provost informed Plaintiff in writing that his actions were dishonest and constituted serious and deliberate personal and professional misconduct; he exhibited a serious disregard for the Catholic character of the university; and he has exposed the university to notorious and public scandal. (*Id.*) These are three of the grounds for dismissal contained in the Academic Articles.

The university based these charges on Plaintiff's conduct related to the procurement of NSF funds and use of equipment obtained with those funds:

1) using NSF funds to purchase equipment significantly different than the equipment specified in the grant documents;

2) failing to inform NSF of the nature of the equipment purchase;

3) submitting a final report under one grant in which he falsely indicated that the grant funds were used as indicated;

4) using equipment purchased with NSF funds for extensive personal use with negligible if any scientific use of the equipment;

5) taking and storing sexually explicit and pornographic images using university computing resources; and

6) failing to exercise care in maintaining university equipment, including university equipment purchased with government funds.

(*Id.*)

After providing Plaintiff with written notice, the Provost tried to resolve the matter through informal measures as required by the Academic Articles. (DE 43-1 ¶18.) When these

efforts proved unsuccessful, he appointed two faculty members, including Fr. Coughlin, to the Academic Council to help resolve the situation, but this informal effort was also unsuccessful. (*Id.* ¶20–21.) At this point, the Provost appointed four faculty members to sit on a Hearing Committee. (*Id.* ¶23.) Three were members of the committee, while the fourth was an alternate. Fr. Coughlin, one of the three members of the Hearing Committee had already served on the Academic Council. (*Id.*)

During the hearing, the university carried the burden of proof to demonstrate the existence of "serious cause" as defined in the contract by clear and convincing evidence. The university focused on the six bases of its charges and did not specifically address how these bases met the definition of "serious cause." (DE 43 at 9.) The Hearing Committee voted to dismiss Plaintiff because of his actions. (*Id.*) After Plaintiff exhausted his internal appeals, Notre Dame dismissed him and he filed this suit alleging breach of contract, and now moves for summary judgment. Notre Dame also moves for summary judgment.

## C. Argument

Plaintiff alleges that Notre Dame breached the tenure contract by not following the procedures set out in the Academic Articles and by dismissing him without proper cause. Notre Dame alleges that Plaintiff breached the contract by engaging in serious and deliberate personal and professional misconduct when he misappropriated over $220,000 in NSF grant money and university matching funds.

**(1)** *Degree of Deference*

In reviewing the universities' actions regarding tenured professors, the courts are reluctant to second-guess the administrative decisions. *See Vanasco v. Nat'l-Louis University*, 137 F.3d 962, 968 (7th Cir. 1998) ("[A court] must not second-guess the expert decisions of faculty committees in the absence of evidence that those decisions mask actual but unarticulated reasons for the University's actions."); *Yackshaw v. John Carroll Univ. Bd. of Trustees*, 624 N.E.2d 225, 228–29 (Ohio App. 8th Dist. 1993) (affording the same deference to a university's findings of fact as the court applies in appeals of administrative decisions); *Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 427–28 (Pa. 2001) (noting that there was nothing in the [tenure c]ontract to indicate that any of the judgments relating to a faculty member's continued place in the University, or lack thereof, would be open to a judge or jury to override").[1] In fact, this Court may only address the substantive violations of the contract if it determines that the university clearly violated its dismissal procedure. *Cf. Murphy v. Duquesne Univ.*, 777 A.2d 418, 433 (Pa. 2001) ("[W]hile [a professor] is free to assert in a court of law that the process of forfeiture that was afforded him did not comply with the contract terms, he is not free to demand that a jury reconsider and re-decide the merits of his termination."); *Baker v. Lafayette College*, 532 A.2d 399, 403 (Pa. 1987) ("This court has no jurisdiction to review the factual determinations of a college's governing body unless it can be clearly demonstrated that the body violated its own procedures."). With this principle in mind, the Court turns to the parties' arguments.

---

[1] The parties primarily refer to law from other jurisdictions because the law in Indiana is scant.

8

**(2)** *Notre Dame Provided Sufficient Notice of Plaintiff's Charges*

Section 8(c) of the Academic Articles lists offenses that could lead to dismissal. Plaintiff says the university must specifically charge him with one or more offenses on the list in its written notice or waive the ability to bring those charges at the hearing. Notre Dame counters by saying that the plain language of the contract contains no such requirement and that the list only relates to a nonexclusive set of examples of prohibited conduct.

Under § 8(c), "[t]he University may impose severe sanctions or terminate the services of any member of the faculty for serious cause." Serious cause is any of the following:

- academic dishonesty or plagiarism; misrepresentation of academic credentials;
- professional incompetence;
- continued neglect of academic duties, regulations, or responsibilities;
- conviction of a felony; serious and deliberate personal or professional misconduct . . .;
- continual serious disregard for the Catholic character of the University; or
- causing notorious and public scandal.

The Provost must "inform[] the accused, in writing, of the charges, of the basis of the charges, and of the proposed sanction." *Id*. The accused professor is then given at least thirty days to prepare a defense to the charges before appearing at the hearing.

The Academic Articles specifically limit the actions that can constitute "serious cause" and require the Provost to notify the accused in writing of the charges against him. Here, the Provost's written notice of the charges against Plaintiff listed three charges: "serious and deliberate misconduct of both a personal and professional nature," a "serious disregard for the Catholic character of the university," and "exposing the university to notorious and public scandal." The Provost also included in his letter the bases for those charges:

9

- using NSF funds to purchase equipment significantly different than the equipment specified in the grant documents;

- failing to inform NSF of the nature of the equipment purchase;

- submitting a final report under one grant in which he falsely indicated that the grant funds were used as indicated;

- using equipment purchased with NSF funds for extensive personal use with negligible if any scientific use of the equipment;

- taking and storing sexually explicit and pornographic images using university computing resources; and

- failing to exercise care in maintaining university equipment, including university equipment purchased with government funds.

At the hearing, Notre Dame presented evidence to prove Plaintiff misappropriated NSF funds but it did not specify which charges the evidence was meant to prove. Plaintiff alleges that this constitutes a breach of the contract because, according to Plaintiff, Notre Dame must specify which §8(b) charge it is trying to prove when it presents evidence. Notre Dame is not required to do this under the plain language of the Academic Articles. Instead, Notre Dame must present evidence of the charges and the basis of the charges against the accused professor, which it did in the Provost's letter. Having done this, Notre Dame avoided any procedural violation of the notice requirement set out in the Academic Articles.

**(3)** *Notre Dame Breached the Contract by Appointing Father Coughlin to Serve on the Hearing Committee*

Finally, Plaintiff maintains that the Hearing Committee was not properly constituted because it included Fr. Coughlin. Before the hearing, Notre Dame's Provost appointed Fr. Coughlin to meet with Plaintiff and the relevant administrator to attempt to resolve the matter as required by § 8(c) of the Academic Articles. The Provost later appointed Fr. Coughlin to serve on the Hearing Committee.

Plaintiff argues that Fr. Coughlin's appointment to the Hearing Committee was improper because any faculty member who takes part in the informal resolution process must recuse himself from the Hearing Committee. He bases this argument on subsection (c)(3) which mandates that the Hearing Committee consist of an alternate "to take the place of any member elected to the Hearing Committee who must recuse himself or herself because of bias or interest, including participation in the informal resolution process set forth above."

Under the plain language of the contract, a Hearing Committee member must recuse himself if he takes part in informal dispute resolution procedures. This language applies to Fr. Coughlin, who did not recuse himself even though he participated in informal procedures at the Provost's request. The university violated its dismissal procedure by allowing Fr. Coughlin to serve on the Hearing Committee.

The Court concludes that Notre Dame breached its procedural obligations under the parties' contract by allowing Fr. Coughlin to serve on the Hearing Committee after he had already participated in the informal dispute resolution procedures.

**D. Conclusion**

The Court grants in part and denies in part Plaintiff's motion for summary judgment (DE 42). The Court also grants in part and denies in part Notre Dame's motion for summary judgment (DE 44).

The Court sets a status teleconference for May 30, 2012, at 11 am. The Court will initiate the call.

SO ORDERED on May 21, 2012.

  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE